IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| STEPHANE J. WANTOU SIANTOU, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:17-cv-00543-PWG |
| CVS RX SERVICES, INC. | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Stephane Wantou Siantou was the head pharmacist at a CVS drug store in Maryland. While there, he filed a multitude of complaints against his employer, alleging the company had been discriminating against him because of his race, nationality, and gender. His rocky tenure was marked by a number of formal reprimands and culminated in his termination in January 2016.

In this suit, Mr. Wantou Siantou alleges that several of the reprimands and his eventual termination constituted unlawful racial discrimination under 42 U.S.C. § 1981 as well as retaliation under various federal and state laws. I grant summary judgment for the defendant, CVS Rx Services Inc. ("CVS"), on the § 1981 discrimination claim, as Mr. Wantou Siantou cannot show that CVS treated him differently from employees outside of the protected class or that his termination was suggestive of racial animus. I also grant partial summary judgment for CVS on the retaliation claim, concluding Mr. Wantou Siantou cannot make the requisite showing that certain reprimands or the termination were retaliatory. He may proceed, though, on his claim that

the company retaliated against him when, in April 2015, it reprimanded him a second time for an alleged unexcused absence from the pharmacy three months earlier.

## FACTUAL BACKGROUND

The controversy in this case unspooled between July 2014 and January 2016, while Mr. Wantou Siantou was employed as the head pharmacist (or "pharmacist-in-charge") at a CVS drug store in Oxon Hill, Maryland. *See* Nguyen Decl. ¶¶ 5-6, Ex. 2, ECF No. 72-3. The store, which was located in a low-income neighborhood, had an unenviable record of performance issues, ranking last among all CVS stores in the country in a companywide assessment of "workflow." Holmes Dep. 111:11-18, Ex. 1(C), ECF No. 72-2. The workforce, like the clientele it served, was diverse. According to Mr. Wantou Siantou, who is black and hails from the Central African nation of Cameroon, *see* Wantou Siantou Decl. ¶ 1, all of the pharmacists on staff during the decade preceding his employment were members of minority groups and, in fact, were "disproportionately African men" like himself. Addendum to Discrimination Compl. 2, Ex. 16, ECF No. 72-17. Mr. Wantou Siantou would later assert: "It is very obvious to me that I would not have been assigned as pharmacy manager in store 1469 had I been a White man . . . ." *Id.*

Mr. Wantou Siantou's tenure was, in many respects, a turbulent one, with friction developing between himself and management only a few months after his arrival and persisting until his termination. During that time, Mr. Wantou Siantou reached out to both the U.S. Equal Employment Opportunity Commission ("EEOC") and, on at least a dozen occasions, to CVS officials to complain about the way his supervisor and other higher-ups had treated him. *See* EEOC Charge, Ex. 34, ECF No. 72-35; Ethics Line Reports, Ex. 20, ECF No. 72-21. This lawsuit alleges that treatment amounted to unlawful discrimination and retaliation.

**Reprimand for Showing Up Late to Work**

Tensions between Mr. Wantou Siantou and management first flared up on the morning of November 18, 2014, when he showed up 25 minutes late for his shift. *See* November 18, 2014 Counseling Report, Ex. 3A, ECF No. 72-4. His late arrival delayed the opening of the pharmacy that morning, forcing four customers to wait for service. *Id.* Mr. Wantou Siantou's supervisor, Tiana Holmes, issued a "counseling" report containing a "Level II" reprimand.[1] *Id.* The report explained that "[f]urther attendance/tardiness issues will result in further disciplinary action to include termination of employment." *Id.* The company soon afterward withdrew the formal reprimand, issuing a "verbal warning" instead. *See* Nguyen Note, Ex. 2(F), ECF No. 72-3.

It was just after this incident (but before the withdrawal of the Level II reprimand) that Mr. Wantou Siantou sent the first of what would be numerous complaints to management about the way he was being treated at the store. In a November 27, 2014 email, he accused Ms. Holmes of failing to recognize the improvements he had made to the pharmacy's operations over the previous four months and complained her decision to reprimand him for a single instance of tardiness "was at best unfair, and at worst discriminatory." November 27, 2014 Email, Ex. 3(B), ECF No. 72-4.

**Reprimands for Leaving the Store**

Tensions escalated in late January 2015, while Mr. Wantou Siantou was sick with the flu. After calling in sick on January 23, he returned to work the following day but was overcome by a variety of symptoms, including nausea and the chills. *See* Wantou Siantou Decl. ¶ 26. He texted and called Ms. Holmes and the pharmacy scheduler to say that he did not feel well enough to

---

[1] The company's employee disciplinary policies allow supervisors to report a "shortfall" in an employee's conduct or job performance. *See, e.g.*, November 18, 2014 Counseling Report. The reports, which become a part of an employee's personnel record, assign each shortfall a tier or "consequence level." *Id.* There are four levels, with Level I reserved for the least serious shortfalls and Level IV warranting termination. *See* Holmes Dep. 105:5-15.

complete his shift and to ask if anyone was available to fill in for him.[2] *Id.*; *see* January 24, 2015

Text Messages, Ex. 12, ECF No. 72-13. Ms. Holmes did some "checking around" but was unable

to find a replacement. Wantou Siantou Dep. 194:19-195:7. Mr. Wantou Siantou "begged" her for

authorization to shut down the pharmacy, Wantou Siantou Decl. ¶ 27, but she refused, advising

him instead to "[s]it in the back if you must and tell all new scripts they will be ready tomorrow,"

Wantou Siantou Dep. 195:1-3. Feeling too cold to stay inside the store, Mr. Wantou Siantou spent

a portion of his remaining shift going back and forth between the store and his car, which was

parked in the lot outside. *See id.* at 182:7-13, 191:3-10. All told, he estimates he spent a little

more than two hours in his car.[3] *See id.* at 191:6-7. Ms. Holmes promptly wrote up the episode

in a counseling report, issuing a Level I reprimand. *See* January 26, 2015 Counseling Report, Ex.

9, ECF No. 72-10.

    Mr. Wantou Siantou complained about the writeup a few days later in an email to CVS

Human Resources Representative Jane Nguyen and Ms. Holmes, characterizing the reprimand as

"extremely harsh." February 2, 2015 Email 2, Ex. 2(H), ECF No. 72-3. The email alleged that

requiring him to remain at work while he was severely ill constituted "a form of discrimination

under the Family and Medical Leave Act and the American[s] with Disabilities Act." *Id.* Ms.

Nguyen called Mr. Wantou Siantou later that day to set up a meeting to discuss his allegations.

Nguyen Dep. 53:17-20. They planned to meet on February 6, 2015, but when Ms. Nguyen arrived

for the meeting Mr. Wantou Siantou "decided he didn't want to talk about his concerns." *Id.* at

---

[2] Maryland regulations require pharmacies to "ensure that the prescription area . . . [p]ermits reasonable communication between the pharmacist and the public when the pharmacy is open." Md. Code Regs. 10.32.05.02.A(1)(b). CVS security policies provide that a registered pharmacist "must be present at all times." Pharmacy Security Policy, Ex. 2(G), ECF No. 72-3.

[3] An investigator's notes of his interview with Mr. Wantou Siantou on March 11, 2015 states he "admitted leaving the store unattended while he was in his car on 1/24/15 for 4 hours." Gerwig March 11 Email, Gerwig Dep. Ex. 8, Ex. 1(F), ECF No. 72-2.

54:4-16. They rescheduled the meeting for February 23, 2015. Nguyen Timeline, Ex. 2(I), ECF No. 72-3.

Mr. Wantou Siantou emailed Ms. Nguyen on the morning of the rescheduled meeting, writing: "Once again I feel discriminated against on the basis of gender, race, and national origin." February 23, 2015 Email, Ex. 37, ECF No. 72-38. The email complained that he had been required to work "every single Monday," while his partner pharmacist, Brenda Taylor, "gets to have every other Monday off." *Id.* "I think this is very discriminatory," he wrote. *Id.* Taylor is an African American woman. *See* Wantou Siantou Dep. 231:16-22. The meeting proceeded as planned that afternoon, but Mr. Wantou Siantou "refused to speak about the e-mails he sent in regards to feeling discriminated against." Nguyen Timeline 1; *see* Nguyen February 23, 2015 Notes, Ex. 2(L), ECF No. 72-3. He later explained in an email that he felt his "voice was not heard" at the meeting and that Ms. Nguyen appeared to be acting as an "advocate" for Ms. Holmes. February 25, 2015 Email, Ex. 2(M), ECF No. 72-3.

On March 1, 2015, Mr. Wantou Siantou sent Ms. Nguyen, Ms. Holmes, and the CVS district manager an email with the subject line, "Formal Complaint of Discrimination Based on Gender, Race, and National Origin." March 1, 2015 Complaint 1, Ex. 10, ECF No. 72-11. There, he wrote: "I feel that there has been very disparate, egregious treatment by my supervisor between me and my staff pharmacist," Ms. Taylor. *Id.* The email alleged that Ms. Taylor, in contrast with himself, had not been reprimanded when she was late to work, enjoyed a preferable work schedule, and had not been held accountable for the store's poor performance. *See id.* It concluded: "I fear retaliation or more adverse actions directed towards me following the writing of this letter. But I feel that the writing of the letter is necessary to achieve a fair, discrimination-free environment and to improve my store." *Id.* at 2.

Around this same time,[4] Ms. Holmes – who was still in her first year as a CVS supervisor – began to take a "closer look" at CVS's policies requiring the presence of a registered pharmacist during operating hours. Holmes Dep. 211:5-18; *see* Nguyen Dep. 75:11-15. She consulted another CVS supervisor who had similarly reprimanded a pharmacist who had left her store unattended for 15 minutes to buy a coffee at a nearby 7 Eleven. *See id.* at 212:13-214:10; Forestville Store Counseling Report, Ex. 2(U), ECF No. 72-3. The pharmacist in that case received a Level III reprimand, a more serious disciplinary action than the one Ms. Holmes had issued to Mr. Wantou Siantou. *See* Forestville Store Counseling Report.

During this same period,[5] either Ms. Holmes or another CVS higher-up asked the company's regional loss prevention officer, James Gerwig Jr., to investigate Mr. Wantou Siantou's conduct during the January 24, 2015 incident. *See* Holmes Dep. 219:6-16; Gerwig Dep. 92:11-93:12, Ex. 1(F), ECF No. 72-2. Mr. Gerwig interviewed Mr. Wantou Siantou and reviewed the store video surveillance footage. *See* Gerwig Dep. 100:8-10. The investigation prompted Ms. Holmes to issue a follow-up counseling report on April 15, 2015, citing Mr. Wantou Siantou for a Level III reprimand. April 15, 2015 Counseling Report, Ex. 13, ECF No. 72-14.

Mr. Wantou Siantou was continuing to raise complaints during this period of time. On April 2, 2015 – one day after Ms. Nguyen and Mr. Gerwig came to the store to speak with him – he emailed Ms. Nguyen and another CVS executive a document entitled "Addendum to Title VII Complaint of Discrimination Based on Race, Gender, and National Origin; and Subsequent

---

[4] Ms. Holmes was unclear in her deposition about exactly when she started reviewing the policies. At one point, she said she "probably" started reviewing them toward the end of February 2015, around the time of the February 23, 2015 meeting with Mr. Wantou Siantou and human resources personnel. *See* Holmes Dep. 211:12-18. At another point, she said her review probably began in March. *See id.* at 208:14-21.
[5] Here, the timeline is again unclear. Mr. Gerwig estimated the call to begin the investigation came in "probably one to two weeks prior" to his March 11, 2015 interview with Mr. Wantou Siantou.

Retaliation Complaint." Addendum to Discrimination Compl., Ex. 16, ECF No. 72-17. The document said he found their visit the day before intimidating and felt it "raised concerns of unfairness and further retaliation for filing a Title VII Complaint." *Id.* It further asserted that he was being held to an unfair standard while working in an especially challenging environment, which resulted in a poor yearly performance evaluation. *Id.* at 3. "If I were a White pharmacist," he wrote, "let alone a White American born female pharmacist, I would not have been assigned as Manager in store 1469 and I would have been held to different standards." *Id.*

The document stated that he wished to be transferred to a different store. *Id.* The next day, Ms. Nguyen offered him the opportunity to accept a position as pharmacist in charge at a store in Hollywood, Maryland, or as a staff pharmacist at either of two stores in New Carollton. *See* Transfer Offer, Ex. 19, ECF No. 72-20. He declined all three options. *See* Wantou Siantou Dep. 348:10-349:20.

Mr. Wantou Siantou took a leave of absence in April 2015 but continued to make complaints against Ms. Holmes and Ms. Nguyen, raising allegations against them in a pair of reports submitted to the CVS ethics complaint line in May 2015. *See* Ethics Line Reports 1-3, Ex. 20, ECF No. 72-21. On May 20, 2015, he filed a charge with the Prince George's County Human Relations Commission and the EEOC alleging the company had retaliated against him in response to the discrimination complaint he submitted to Ms. Nguyen in March 2015. *See* May 2015 EEOC Charge, Ex. 14, ECF No. 72-15.

### Reprimands for Failing Scores on Store Audits

During the summer and fall of 2015, the regional loss prevention officer, Mr. Gerwig, conducted a series of walkthroughs and audits of the Oxon Hill store. *See* Gerwig Dep. 78:20-79:16. Under company policy at the time, a pharmacy receiving a score of less than 85 percent on

7

a baseline audit was said to have failed, triggering the need for a follow-up audit. Gerwig Decl. ¶¶ 7, 10. These audits had consequences for the store's pharmacist in charge, who, in accordance with store policy, would receive a Level II reprimand for the initial failing score and a Level III "final warning" should the store also fail the follow-up audit. *Id.* ¶¶ 7-8, 11. Neither the loss prevention manager nor the pharmacy supervisor has any discretion over the issuance of reprimands under these circumstances. *See* Gerwig Decl. ¶ 8.

Mr. Gerwig audited the Oxon Hill store on August 19, 2015, roughly 30 days after Mr. Wantou Siantou returned from his leave of absence. *See* August 2015 Audit Scorecard, Ex. 4(A), ECF No. 72-5; Wantou Siantou Decl. ¶ 47-48. The audit yielded a failing score of 82.22 percent. August 2015 Audit Scorecard. The store failed a follow-up audit on October 1, 2015, this time receiving a score of 84.78 percent. *See* October 2015 Corrective Action Record 1, Ex. 3(F), ECF No. 72-4. Mr. Wantou Siantou received Level II and Level III reprimands for these audits, respectively.[6] *See* August 2015 Corrective Action Record 2, Ex. 3(E), ECF No. 72-4; October 2015 Corrective Action Record 3. Mr. Gerwig has said that at no time while working on these audits was he aware that Mr. Wantou Siantou had filed any complaints of discrimination or retaliation. *See* Gerwig Decl. ¶ 13.

In between the two audits, Mr. Wantou Siantou filed new paperwork with the Prince George's County Human Relations Commission and EEOC supplementing his earlier charge. *See*

---

[6] The Oxon Hill store had in fact failed an earlier audit in May 2015, while Mr. Wantou Siantou was on leave. *See* Holmes Decl. ¶ 9. Accordingly, the company initially issued him a Level III reprimand following the store's failing score on the August 19, 2015 audit. *See id.* The company reduced the reprimand to Level II because Mr. Wantou Siantou had been on leave at the time of the May audit. *See id.* Ms. Holmes notified him of the "correction" on September 21, 2015, *see* "Baseline Accountability" Correction Email, Ex. 3(E), ECF No. 72-4, two days before he complained about the reprimand in a supplemental filing with the EEOC, *see* September 2015 EEOC Charge, Ex. 34, ECF No. 72-35.

8

September 2015 EEOC Charge, Ex. 34, ECF No. 72-35. The new filing took issue with the reprimand he received as a result of the failed August 2015 audit, asserting the company took this step "in further retaliation" because of his previous EEOC charge. *Id.*

Mr. Wantou Siantou continued to air his concerns through the CVS ethics complaint line. On October 3, 2015, just after the loss prevention officer completed the follow-up audit, he alleged the audits "were set up by management as retaliation" for his internal discrimination complaint and EEOC charge. Ethics Line Reports 4. He lodged more complaints via the ethics complaint line on November 7, 2015, and December 9, 2015, complaining that his supervisors were not appreciating his hard work and that his partner, Ms. Taylor, was not shouldering her share of the workload. *See id.* at 4-9. He maintained that the company was discriminating against him on account of his race, gender, and national origin and was retaliating against him because of his various complaints. *See id.* at 5, 7.

### Termination

The conflict between Mr. Wantou Siantou and Ms. Holmes came to a head in the two months following November 4, 2015, when a physical fight broke out between a pharmacy technician named Latara Wellman and a disgruntled customer at the store. *See* Application for Statement of Charges, Ex. 23, ECF No. 72-24. Ms. Holmes ordered Mr. Wantou Siantou to fire Ms. Wellman, although there is a dispute over exactly when she issued those instructions. Ms. Holmes stated in her deposition, and the company has asserted in its answers to interrogatories, that she first gave the order in late November 2015 and then repeated the instructions during a store visit on December 17, 2015, after learning that Mr. Wantou Siantou had not followed through on the order. *See* Holmes Dep. 284:10-19, 289:1-290:21; Def.'s Suppl. Resps. 7, Nguyen Dep. Ex. 1, Ex. 1(B), ECF No. 72-2.

Mr. Wantou Siantou has maintained that he did not learn about the directive until Store Manager Adebowale "Roland" Saibu mentioned it sometime between January 4 and January 6, 2016, shortly after Mr. Wantou returned from a two-week vacation. *See* Wantou Siantou Dep. 465:14-18; Wantou Siantou Decl. ¶ 56. Saibu told him Ms. Holmes "wants you to let [Ms. Wellman] go ASAP." Saibu Dep. 66:5-67:7. Mr. Wantou Siantou said he "wasn't comfortable doing it," saying he felt as though he was being "set up." *Id.* at 67:9-19.

Mr. Wantou Siantou lodged more complaints via the CVS ethics complaint line on January 3, January 5, and January 6, 2016, repeating his past allegations that the company was discriminating against him and retaliating for his previous complaints. *See* Ethics Line Reports 9-14. On the morning of January 8, 2016, Ms. Holmes texted Mr. Wantou Siantou, asking, "Has Latara been terminated?" January 8, 2016 Texts, Ex 3(G), ECF No. 72-4. Mr. Wantou Siantou replied that he had "just tried to call" her. *Id.* In an ensuing phone call, Mr. Wantou Siantou asked her if she could put the directive in writing. *See* Wantou Siantou Dep. 432:22-433:3. She refused. *See id.* at 433:4-5. Ms. Holmes told him he must fire Ms. Wellman "by the end of the day or it would be considered insubordination, which would lead to his termination." *See* Termination Report, Ex 3(J), ECF No. 72-4; Wantou Siantou Dep. 432:18-20.

Mr. Wantou Siantou promptly called the CVS ethics complaint line, accusing Ms. Holmes of putting him "in an impossible situation." Ethics Line Reports 14-15. He alleged that Ms. Holmes was either "trying to get [him] fired" or forcing him into a confrontation with Ms. Wellman, which could "endanger[] his life." *Id.* at 15.

Mr. Wantou Siantou removed Ms. Wellman from the store schedule but did not fire her. *See* Termination Report. Three days later, on January 11, 2016, Ms. Holmes told him he was fired.

*See id.* Ms. Holmes said in her deposition that his failure to fire Ms. Wellman was the sole reason for his termination. *See* Holmes Dep. 107:6-10.

**Procedural History**

Mr. Wantou Siantou brought this suit against CVS on December 14, 2016. Compl., ECF No. 1. The Amended Complaint accused CVS of discriminating against him on the basis of race (Count I), national origin (Count II), and gender (Count III). *See* Am. Compl. ¶¶ 61-111, ECF No. 29. Mr. Wantou Siantou also brought a claim of retaliation under federal and state law (Count IV). *See id.* ¶¶ 112-29.

CVS filed an unopposed motion to dismiss in part, arguing Mr. Wantou Siantou had failed to administratively exhaust his discrimination claims under Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act ("MFEPA"). *See* ECF Nos. 41, 42. I granted the motion, ECF No. 46, leaving Mr. Wantou Siantou to proceed on the following claims only: racial discrimination under 42 U.S.C. § 1981 (Count I) and retaliation under Title VII, 42 U.S.C. § 1981, and the MFEPA (Count IV).

CVS now moves for summary judgment on the remaining claims. *See* ECF No. 67. The parties have fully briefed their arguments.[7] *See* ECF Nos. 67, 70, 71, 72. No hearing is necessary. *See* Loc. R. 105.6.

---

[7] Mr. Wantou Siantou has requested leave of the Court to file a surreply. *See* Mot. for Leave, ECF No. 73. His motion acknowledges that surreplies are "highly disfavored and rarely granted," *id.*, but argues the request is justified here because CVS's reply raised two arguments that did not appear in its motion for summary judgment: first, that the company could not have retaliated against him because Ms. Nguyen reached out to his union representative in an effort to help him avoid termination and, second, that he admitted he received instructions to fire Ms. Wellman prior to his January 8, 2016 conversation with Ms. Holmes. *See id.* at 3-4.

Whether to allow a surreply is within the Court's discretion. *See* Loc. R. 105.2.a; *Courtney-Pope v. Bd. of Educ. Of Carroll Cty.*, 304 F. Supp. 3d 480, 485 (D. Md. 2018). Generally, courts do not permit a party to file a surreply unless it otherwise would not have an opportunity to contest a matter the nonmoving party had failed to present prior to its reply. *See Clear Channel Outdoor,*

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure obliges a court to enter summary judgment in a movant's favor upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Smith v. Renal Treatment Ctrs.-Mid-Atl., Inc.*, No. RDB-16-3656, 2018 WL 950018, at *4 (D. Md. Feb. 20, 2018), *aff'd*, 736 F. App'x 68 (4th Cir. 2018). "A dispute of material fact is genuine if the evidence would allow the trier of fact to return a verdict for the nonmoving party." *United Bank v. Buckingham*, 301 F. Supp. 3d 561, 568 (D. Md. 2018). The court must view the facts and make all reasonable inferences "in the light most favorable to the nonmoving party." *Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016). In doing so, though, the court maintains an "affirmative obligation to prevent factually unsupported claims and defenses from going to trial." *Smith*, 2018 WL 950018, at *4. "The mere existence of a 'scintilla' of evidence in support of the nonmoving party's case is not sufficient" to defeat summary judgment. *Id.*

---

*Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014). That is not the case here. CVS's reply did exactly what a reply ought to do: it responded to arguments raised in the response in opposition to its motion. *See id.* None of the arguments in the reply could have caught Mr. Wantou Siantou by surprise. Indeed, the motion for leave to file a surreply acknowledges that Ms. Nguyen's outreach to the union representative was not new information, as CVS had mentioned this communication in its motion for summary judgment. *See* Mot. for Leave 3; Mot. for Summ. J. ¶ 87. Likewise, Mr. Wantou Siantou cannot plausibly argue he did not know CVS would assert he knew about the order to fire Ms. Wellman before January 8, 2016, seeing as his response in opposition devoted at least six pages to his contention that Ms. Holmes's claims to the contrary were false. *See* Resp. in Opp'n 21-27.

Mr. Wantou Siantou's motion also argues a surreply is warranted because CVS "produced over two hundred pages of supplemental discovery and privilege logs after the close of discovery and two days prior to filing its Reply." Mot. for Leave 4. It does not appear, though, that CVS relied on these filings in its reply. (CVS states it did not. ECF No. 81.) That being so, I see no reason to exercise my discretionary authority to authorize the proposed surreply. Mr. Wantou Siantou's motion is denied.

## DISCUSSION

CVS has moved for summary judgment on each of Mr. Wantou Siantou's remaining claims. I will examine each claim in turn.

### Racial Discrimination

Count I of the Amended Complaint argues CVS discriminated against Mr. Wantou Siantou on the basis of race in violation of three statutes: Section 2000e-2 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981; and MFEPA Section 20-606(a). *See* Am. Compl. 6-7. I previously dismissed the Title VII and MFEPA discrimination claims, *see* ECF No. 46, so only the § 1981 claim is before me.

Section 1981 guarantees that people of all races shall have an equal right to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b). The Supreme Court long ago held that this statute, like Title VII, authorizes suits alleging racial discrimination in private employment. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

While the two statutes are not identical,[8] courts generally apply the same framework when analyzing claims under either of them. *See Smith v. Renal Treatment Ctrs.-Mid-Atl., Inc.*, No. RDB-16-3656, 2018 WL 950018, at *5 (D. Md. Feb. 20, 2018), *aff'd*, 736 F. App'x 68 (4th Cir. 2018); *Perkins v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. DKC-08-3340, 2010 WL 889673, at *3 (D. Md. Mar. 5, 2010). Under either statute, a plaintiff may establish its claim and defeat summary judgment in either of two ways. First, the plaintiff may present "direct or

---

[8] Most notably, § 1981 does not require the exhaustion of administrative remedies as a precondition to bringing suit; Title VII does. *See* Sillah v. Burwell, 244 F. Supp. 3d 499, 512 n.11 (D. Md. 2017).

circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). When that route is unavailable, the plaintiff "must proceed under the familiar burden shifting standard" the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394 (D. Md. 2004), *aff'd*, 183 F. App'x 387 (4th Cir. 2006). Mr. Wantou Siantou has not presented direct or circumstantial evidence of discriminatory intent here, so the *McDonnell Douglas* framework governs his claim.

Under *McDonnell Douglas*, a plaintiff must first make out a prima facie case of discrimination. *Holland*, 487 F.3d at 214. Invariably, the plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) at the time of the adverse action, he was performing his job duties at a level that met his employer's legitimate expectations. *Id.* In cases where the adverse employment action was a termination, the plaintiff must also show that "the position remained open or was filled by similarly qualified applicants outside the protected class." *Id.* For other varieties of adverse actions, the plaintiff bears the burden of showing "he was treated differently from other similarly situated persons who are not members" of the protected class. *Pulley*, 348 F. Supp. 2d at 394.

If, upon review, the plaintiff "establishes a prima facie case of discrimination, the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for its conduct." *Smith*, 2018 WL 950018, at *5. A successful showing here will then shift the burden back to the plaintiff "to prove that the employer's legitimate reason for the adverse action is merely a pretext." *Id.*

Mr. Wantou Siantou, a black man, is plainly a member of a protected class. *See Pulley*, 348 F. Supp. 2d at 394. Beyond that, though, it is not at all clear how he expects the Court to

conclude that he can establish a prima facie case of discrimination as a matter of law. His response in opposition to the motion for summary judgment gives the § 1981 discrimination claim short shrift, devoting only a single, three-sentence paragraph to it. *See* Resp. in Opp'n 35, ECF No. 71. The first sentence states only that Mr. Wantou Siantou alleges discrimination under § 1981. *Id.* The second lists the elements of a prima facie claim of discrimination. *Id.* The paragraph then concludes: "Wantou has clearly set forth a plausible claim of discrimination based on the disparate treatment between Wantou and Brenda Taylor by Holmes." *Id.*

This is an unusual claim, to say the least. To be sure, Mr. Wantou's complaints to CVS are replete with allegations that Ms. Taylor, the store's staff pharmacist, received favorable treatment in spite of chronic performance issues. *See, e.g.*, March 1, 2015 Complaint 1. It is difficult to see, though, how these assertions could support a claim of racial discrimination, considering Ms. Taylor is herself a member of the same racial minority as Mr. Wantou Siantou. *See* Wantou Siantou Decl. ¶ 21. To the extent, then, that Mr. Wantou Siantou alleges the various reprimands preceding his termination were actionable under § 1981, he has failed to demonstrate that he received "different treatment from similarly situated employees outside the protected class." *Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 230 (4th Cir. 2018) (per curiam); *see Byrd v. Balt. Sun Co.*, 279 F. Supp. 2d 662, 669 (D. Md. 2003) (holding that no reasonable jury could find for plaintiff on his Title VII and § 1981 racial discrimination claims, in part because plaintiff "was unable to identify a single person that was treated differently in circumstances comparable to his, much less a person outside of the class").

While the response in opposition does not clearly state whether Mr. Wantou Siantou believes his termination on January 11, 2016, was itself discriminatory, I would consider this assertion defective in much the same way. The "general rule" in the Fourth Circuit is that a

plaintiff challenging his termination under § 2000e-2 (and by extension § 1981) must show that he was "replaced by someone outside [his] protected class." *Mabry v. Capital One, N.A.*, No. GJH-13-02059, 2014 WL 6875791, at *4 (D. Md. Dec. 3, 2014) (quoting *Miles v. Dell*, 429 F.3d 480, 486 (4th Cir. 2005)). This rule gives way in "limited situations" – for instance, when the plaintiff "can show that the firing and replacement hiring decisions were made by different decision-makers," *id.* (quoting *Miles*, 429 F.3d at 485), or where the "decision to hire another person from within the protected class is done to disguise the act of discrimination," *id.* at *5 n.3. Here, there is no dispute that CVS replaced Mr. Wantou Siantou with a pharmacist of the same race, *see* Holmes Decl. ¶ 11; Wantou Siantou Dep. 560:8-22, and Mr. Wantou Siantou has not attempted to show that any of the exceptions to the general rule apply.

The lack of a genuine dispute of material fact on these points establishes an inference that the adverse employment actions alleged in the Amended Complaint were unrelated to Mr. Wantou Siantou's race. *See Miles*, 429 F.3d 490 n.7. Other undisputed facts point in the same direction. For example, Mr. Wantou Siantou does not deny that the supervisor who made the decision to fire him, Ms. Holmes, is herself a member of the protected class. *See* Wantou Siantou Decl. ¶ 19 (identifying Ms. Holmes as an "African American Female"). He has also personally observed that a "disproportionately" high percentage of the pharmacists hired at the Oxon Hill store have been African men, such as himself. *See* Addendum to Discrimination Compl. 2. More than that, he has asserted that he "would not have been assigned as pharmacy manager [there] had [he] been a White man." *Id.* This last assertion is entirely at odds with his discrimination claim. Mr. Wantou Siantou can hardly expect a reasonable factfinder to conclude that CVS fired him because of his race if, in the same breath, he argues his race was the reason he got the job in the first place.

In short, Mr. Wantou Siantou has not established a prima facie case of racial discrimination under § 1981. As to Count I, CVS's motion for summary judgment is granted.

## Retaliation

Mr. Wantou Siantou is far more zealous in arguing that his retaliation claims survive summary judgment. Those claims, comprising Count IV of the Amended Complaint, arise under three statutes: Title VII, 42 U.S.C. § 2000e-3(a); § 1981; and the MFEPA, Md. Code Ann., State Gov't § 20-606(f). The same analysis applies to all three claims. *See Hawkins v. Leggett*, 955 F. Supp. 2d 474, 497 (D. Md. 2013), *aff'd sub nom. In re Canarte*, 558 F. App'x 327 (4th Cir. 2014) (per curiam); *Tibbs v. Balt. City Police Dep't*, No. RDB-11-1335, 2012 WL 3655564, at *3 (D. Md. Aug. 23, 2012).

Once again, in the absence of direct evidence, *McDonnell Douglas* supplies the applicable framework. To begin, the plaintiff first bears the burden of establishing a prima facie case of retaliation. To do this, he must show that (1) he "engaged in a protected activity"; (2) his employer "acted adversely against him"; and (3) "the protected activity was causally connected to the adverse action." *Holland*, 487 F.3d at 218. If the plaintiff makes the requisite showing, "the employer may then rebut the prima facie case by showing there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997) (citation omitted).

### A.

CVS argues Mr. Wantou Siantou cannot establish a prima facie case of retaliation, *see* Mot. for Summ. J. 30-33, so my analysis begins there. The first question is whether he engaged in a protected activity. "Protected opposition activity can take numerous forms," from formal charges

of discrimination to informal grievances or protests. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 n.4 (4th Cir. 2018). "To warrant protection, the employee's perception of a violation must be 'objectively reasonable' under the circumstances known to [him]." *Id.* at 328.

Here, there does not appear to be any dispute that Mr. Wantou Siantou's various complaints to the company and to the EEOC constitute "protected activity." The portions of CVS's motion for summary judgment and reply addressing the retaliation claims do not expressly argue that the allegations in these complaints were not objectively reasonable (nor, for that matter, do they even note that the prima facie case requires a showing of objective reasonability). *See* Mot. for Summ. J. 30-33; Reply 1-3, 7-16. While I have already explained why Mr. Wantou Siantou's racial discrimination claim rested on a weak foundation, his allegations that the company discriminated against him on the basis of his national origin and gender were not so glaringly faulty. At the very least, he has amply demonstrated that there were distinctions in the way the company treated him as compared to his colleague Ms. Taylor, a native-born American woman. March 1, 2015 Complaint 1. At this stage, where I must view the facts in the light most favorable to Mr. Wantou Siantou, as the nonmoving party, I am satisfied that a reasonable juror could find he had "reason to believe" he was the victim of discrimination. *Strothers*, 895 F.3d at 328. I conclude, therefore, that Mr. Wantou Siantou was engaged in a protected activity.

## B.

This leads me to the second element of the prima facie case: the requirement of an adverse action.[9] There is no question that Mr. Wantou Siantou's termination qualifies as an adverse action.

---

[9] The Fourth Circuit recently noted that some district courts have continued to use the phrase "adverse employment action," rather than "adverse action." *Strothers*, 895 F.3d at 327 n.3. The appellate court clarified that the latter phrasing is more appropriate, given that "an adverse action need not be employment- or workplace-related in order to sustain a retaliation claim." *Id.*

*See Perkins*, 2010 WL 889673, at \*6. CVS, though, argues the other disciplinary actions it took against him do not. I disagree.

To establish an adverse action for a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491-92 (D. Md. 2013) (quoting *Madock v. McHugh*, No. ELH-10-2706, 2011 WL 3654460, at \*26 (D. Md. Aug. 18, 2011)). An action is said to be "materially adverse" when it "is one that 'well might have dissuaded a reasonable worker' from engaging in protected conduct." *Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009) (per curiam) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Mr. Wantou Siantou's response in opposition to the motion for summary judgment argues that, in addition to the termination, the Level II and Level III reprimands he received in 2015 were retaliatory. *See* Resp. in Opp'n 21, 34. Mr. Wantou Siantou received three such reprimands. The first was a Level III reprimand issued on April 15, 2015, in response to his allegedly unexcused absence from the pharmacy while sick with the flu. *See* April 15, 2015 Counseling Report. The other two were issued in August and October 2015 in connection with the failing scores on the store's audits.[10] *See* August 2015 Corrective Action Record 2; October 2015 Corrective Action Record 3.

CVS cites *Amirmokri v. Abraham*, 437 F. Supp. 2d 414 (D. Md. 2006), for the proposition that "a formal letter of reprimand is not generally an adverse employment action." Mot. for Summ. J. 31. That case, though, applied an outdated interpretation of "adverse action." In *Amirmokri*,

---

[10] Mr. Wantou Siantou also received a Level II reprimand for arriving late to work on November 18, 2014, but the company later withdrew the reprimand and issued a verbal warning instead. *See* Nguyen Note. His response in opposition to the motion for summary judgment does not assert that the verbal warning constituted an adverse action for purposes of a retaliation claim.

the court recited then-controlling Fourth Circuit precedent holding that a plaintiff seeking to make a prima facie case of retaliation "must show the defendant's actions 'adversely affected the terms, conditions, or benefits of plaintiff's employment.'" 437 F. Supp. 2d at 422 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 861 (4th Cir. 2001), *abrogated by Burlington N.*, 548 U.S. 53 (2006)). The Supreme Court struck down that precedent just a few weeks later in *Burlington Northern & Santa Fe Railway Co. v. White*, holding that the standard for a materially adverse action in a retaliation claim is not the same as the standard in discrimination claims. 548 U.S. at 64. *Burlington Northern* clarified that, to succeed on a retaliation claim, the plaintiff need only show that the challenged action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Applying this less exacting standard, courts easily have concluded that reprimands may qualify as adverse actions under some conditions. In *Smith v. Board of Education of Prince George's County*, the court explained that reprimands "suggestive of an impact to the terms and conditions of employment may be the subject of a retaliation claim." No. GJH-16-206, 2017 WL 6278798, at *3 (D. Md. Dec. 8, 2017). There, the court determined that a "letter of professional counseling" was an adverse action because it "suggested that Plaintiff's failure to improve her performance could result in termination." *Id.*

The Level II and Level III reprimands in this case are no less actionable. CVS's counseling reports are part of an employee's personnel record. *See, e.g.*, April 2015 Counseling Report. Here, the reports state that future failures to comply with company policies "may result in further disciplinary action, up to and including termination." *Id.*; *see* August 2015 Corrective Action Record 2; October 2015 Corrective Action Record 3. A Level III writeup is particularly serious;

a CVS ethics complaint line report characterizes this level as "one step away from being terminated." CVS Ethics Line Reports 1. It seems evident to me that these reprimands surely could discourage a reasonable employee from speaking out about perceived violations of employment law. *See Smith*, 2017 WL 6278798, at *3.

CVS points out that Mr. Wantou Siantou acknowledged in his deposition testimony that the April 2015 reprimand did not stop him from filing further complaints. Mot. for Summ. J. 31 (citing Wantou Siantou Dep. 221:14-21). The standard, though, is an *objective* standard, not a subjective one. *See Burlington N.*, 548 U.S. at 69. It makes no difference whether Mr. Wantou Siantou was undeterred, so long as the adverse action might have dissuaded a hypothetical "reasonable" employee. In my view, the Level II and III reprimands clearly satisfy this standard.

## C.

The third and final element of the prima facie case necessitates a showing that "a causal connection existed between the protected activity and the adverse action." *Wonasue*, 984 F. Supp. 2d at 491. As the Fourth Circuit recently explained, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335. To clear the bar, the employee need only show "that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 335-36.

CVS argues the requisite causal connection was lacking here because Mr. Wantou Siantou had been registering substantially similar complaints for nearly the entire duration of his employment, as though the cumulative effect of his many grievances somehow vitiates their potential to spur a retaliatory response. I reject this reasoning. An employer is not necessarily any less likely to retaliate against an employee who files a series of complaints than against an

employee who files just one complaint. To the contrary, an employer is more likely to retaliate against an employee whom it regards as a problem, based on the non-stop filing of complaints, than against one who complained a single time during a multi-year employment tenure. So long as the employer had knowledge of the protected activity (or activities) and effected the adverse action soon after one or more of those activities came to its attention, the causation element of the prima facie case of retaliation is satisfied. *See Strothers*, 895 F.3d at 336-37.

Here, Mr. Wantou Siantou filed so many complaints that a reasonable fact finder may well conclude that the requisite causal connection was present for both the April 2015 Level III reprimand and the January 11, 2016 decision to fire Mr. Wantou Siantou. In each instance, the supervisor responsible for the adverse action (Ms. Holmes) was apparently aware that he had recently leveled complaints against her and the company. *See* Holmes Dep. 238:18-239:15. The April 2015 Level III writeup came six weeks after Mr. Wantou Siantou emailed his "formal complaint" to Ms. Holmes and other CVS managers and two weeks after he emailed the "addendum" to Ms. Nguyen. *See* March 1, 2015 Complaint 1; Addendum. The temporal proximity is even stronger in the case of Mr. Wantou Siantou's termination, which occurred mere days after he registered a series of complaints with the CVS ethics complaint line. *See* Ethics Line Reports 9-15. These facts persuade me that Mr. Wantou Siantou has met his burden, at the summary judgment stage, of establishing a prima facie case for both the April 2015 Level III warning and his January 2016 termination.

My assessment of the circumstances surrounding the Level II and Level III reprimands he received in response to the store's audit scores leads me to a different conclusion. Throughout Mr. Wantou Siantou's tenure as pharmacist-in-charge at the Oxon Hill store, the store was on the list of "focus stores" the company's regional loss prevention officer was required to audit on a monthly

22

basis. Gerwig Dep. 48:20-22, 66:9-16. The loss prevention officer had discretion over whether those audits should extend to the store's pharmacy section, *see id.* at 72:18-73:14, but it was considered a "best practice" to audit the pharmacy along with the rest of the store, *id.* at 85:10-13. Mr. Gerwig, the loss prevention officer, said in his deposition that no one requested the August 2015 audit (the first of the two audits for which Mr. Wantou Siantou would be reprimanded). *See id.* at 85:17-86:8. He has also said that, at the time he conducted that audit and the one that followed, he "had no knowledge that Wantou [Siantou] had complained about discrimination or retaliation internally within CVS or to an administrative agency." Gerwig Decl. ¶ 13.

Mr. Gerwig explained that company policy imposed mandatory consequences for a failing score on an audit. If a pharmacy scored too low, the company would issue a Level II reprimand to the pharmacist-in-charge. Gerwig Decl. ¶ 7. The failing score would automatically trigger the loss prevention officer to conduct a follow-up audit within 30 days. *See* Gerwig Dep. 85:3-6; Gerwig Decl. ¶ 10. If the pharmacy failed yet again, the pharmacist-in-charge would receive a Level III "final warning." Gerwig Decl. ¶ 11. Mr. Gerwig explained that neither he nor the pharmacy supervisor had any discretion over the issuance of reprimands for failed audits. *Id.* ¶ 8.

Mr. Wantou Siantou does not appear to have placed any of these facts in dispute. *See* Resp. in Opp'n 6 (acknowledging that the Oxon Hill store was a "focus store" that had "failed many, many prior audits"). It seems to me, then, that a reasonable factfinder would have to conclude there was no causal connection between Mr. Wantou Siantou's various complaints and the audits that automatically triggered the August and October 2015 reprimands. His allegations that these particular reprimands were retaliatory do not survive summary judgment.

D.

To summarize, I conclude that genuine disputes of material fact exist that would allow Mr. Wantou Siantou to establish a prima facie case that the April 2015 Level III reprimand and his termination were retaliatory, but not the August and October 2015 reprimands relating to the store's audit scores. Under the *McDonnell Douglas* framework, the burden now shifts – first to CVS to establish legitimate, non-discriminatory reasons for its adverse actions, and then back to Mr. Wantou Siantou to demonstrate that those reasons were pretextual. *See Munday*, 126 F.3d at 242.

CVS easily meets its burden – which, I note, is a burden of production, not of persuasion. *See Battle v. Price*, No. PWG-14-2250, 2018 WL 1963791, at *2 (D. Md. Apr. 25, 2018). This is not a case where the company purported to censure a worker in light of subjective assessments that his job performance was subpar. *See Patrick v. Ridge*, 394 F.3d 311, 316-17 (5th Cir. 2004) (explaining the employer "must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee"). Here, rather, the company attributed its adverse actions to specific incidents of sanctionable conduct. The April 2015 counseling report alleges Mr. Wantou Siantou violated state regualtions and company policy by leaving the pharmacy unsupervised for two and a half hours. *See* April 15, 2015 Counseling Report. Similarly, the company's writeup of its decision to terminate his employment in January 2016 alleges he did not comply with orders to fire a member of his staff who had punched a customer in the face. *See* Termination Report 1-2. These assertions are sufficiently specific to rebut Mr. Wantou Siantou's prima facie case and afford him an opportunity, under the final step in the *McDonnell Douglas* test, to show the stated reasons were, in fact, pretextual. *See Patrick*, 394 F.3d at 317.

Here, again, we must consider causation. Now, though, the employee faces a heavier burden than he did at the prima facie stage. To meet this burden, the employee must demonstrate "that retaliation was the actual reason for the challenged" adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). That is to say, he "must establish 'both that the employer's reason was false and that retaliation was the real reason for the challenged conduct.'" *Id.* (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). The employee need not show that the protected activity was the *sole* cause of the adverse action. His burden, rather, is to show that it was the "but-for" cause. *See Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 217 (4th Cir. 2016).

I will analyze each of the alleged retaliatory actions independently,[11] starting with the April 2015 Level III reprimand for Mr. Wantou Siantou's conduct while sick with the flu on January 24, 2015. As CVS notes, he has not denied that he left the pharmacy for stretches of time that day to warm himself in his car. *See* Wantou Siantou Dep. 191:6-7; Wantou Siantou Decl. ¶¶ 28-29. Mr. Wantou Siantou notes, though, that this conduct earned him a Level I reprimand on January 26, 2015. *See* January 26, 2015 Counseling Report. It was not until sometime later that Ms. Holmes decided to take a "closer look" at the relevant company policies, Holmes Dep. 211:5-18, which led her to consult another CVS supervisor who had issued a harsher reprimand in response to an arguably similar infraction, *see id.* at 212:13-214:10. Ms. Holmes was unclear about exactly when she decided to commence her review, raising a genuine dispute of material fact as to whether this decision predated Mr. Wantou Siantou's March 1, 2015 email registering a "formal complaint" of

---

[11] I have already explained that Mr. Wantou Siantou cannot establish a causal connection between his protected activities and the reprimands he received in response to the baseline audits of the pharmacy. Suffice it to say, I would cite all the same reasons in concluding that he cannot meet the more stringent burden of showing that his complaints, rather than the failing audit scores, were the real reason behind those reprimands.

discrimination. The record is similarly unclear on whether it was Ms. Holmes or someone else who asked the regional loss prevention officer to launch the investigation that ultimately led to the April 2015 Level III reprimand. *See* Holmes Dep. 219:6-16; Gerwig Dep. 92:11-93:12. So long as these facts are in dispute, I must permit Mr. Wantou Siantou to proceed on his claim that the April 2015 reprimand was retaliatory.

Finally, there is the matter of his termination. Mr. Wantou Siantou's response in opposition to the motion for summary judgment argues emphatically that Ms. Holmes was not telling the truth when she said she personally instructed him on November 25, 2015, and again on December 17, 2015, to fire Ms. Wellman. *See* Resp. in Opp'n 21-25. He maintains it was entirely reasonable for him to refuse the instructions when, by his account, Ms. Holmes first issued them on January 8, 2016. *See id.* at 26. He suggests a factfinder could infer from the circumstances that Ms. Holmes "concocted a story that she had previously told [him] . . . to fire Wellman to create the appearance that [he] was 'insubordinate' when he really was not." *Id.* at 27.

Here is what is not in dispute in this case: Mr. Wantou Siantou was Ms. Wellman's direct supervisor. Wantou Siantou Decl. ¶ 68. On November 4, 2015, Ms. Wellman punched a customer – a fireable offense, if there ever was one. *See* Gerwig Dep. 144:13-15. Mr. Wantou Siantou was not present at the time but became aware of the altercation (though not necessarily all of the details) within a week of when it happened. *See* Wantou Siantou Dep. 415:9-416:11; CVS Ethics Line Reports 15 (noting he "had assumed all along that the incident involving [Ms. Wellman] would be investigated by the proper CVS authorities and HR"). On January 5 or 6, 2016, the store manager, Mr. Saibu, told Mr. Wantou Siantou that Ms. Holmes "wants you to let [Ms. Wellman] go ASAP." Saibu Dep. 66:5-67:7; *see* Wantou Siantou Dep. 457:20-458:19. Mr. Wantou Siantou did not then fire Ms. Wellman or reach out to Ms. Holmes to discuss the matter. *See* Wantou Siantou Dep.

26

461:13-17. Ms. Holmes texted him on the morning of January 8, 2016, asking, "Has Latara been terminated?" January 8, 2016 Texts. Soon afterward, according to Mr. Wantou Siantou, Ms. Holmes explained in a phone call "that I have to fire [Ms. Wellman] or that it would be considered insubordination." Wantou Siantou Dep. 432:18-20. Mr. Wantou Siantou understood his refusal to comply with the directive could cost him his job. *See* CVS Ethics Line Reports 15 (documenting Mr. Wantou Siantou's concern on January 8, 2016, that Ms. Holmes might fire him for insubordination). Mr. Wantou Siantou removed Ms. Wellman from the store schedule but did not fire her. *See* Wantou Siantou Dep. 433:12-13.

In the face of these uncontested facts, Mr. Wantou Siantou asks me to zero in on one assertion he does dispute – namely, that Ms. Holmes ordered him to fire Ms. Wellman on two prior occasions before finally delivering an ultimatum on January 8, 2016. But what of it? Even if I assume those conversations never took place, there is still no question that Mr. Wantou Siantou – knowing a member of his staff had physically assaulted a customer (a fireable offense) – disobeyed a direct order, despite a warning that his refusal to comply with his supervisor's instructions could result in termination.

Granted, Mr. Wantou Siantou put in a series of calls to the CVS ethics complaint line in the days leading up to his termination. *See* Ethics Line Reports 9-14. Here, though, he has not presented any facts tending to show that these calls were the "real reason" Ms. Holmes decided to terminate his employment. *Foster*, 787 F.3d at 252. If anything, Ms. Holmes suggested his calls to the ethics line did not faze her, telling him – after he indicated during the January 8 phone call that he planned to call the ethics line – that "he can call whomever he wished, but he needs to complete the termination before the end of the day." Timeline, Ex. 28, ECF No. 72-29.

Mr. Wantou Siantou's theory that the conflict over Ms. Wellman's termination was just a pretext for his own termination is wanting in other ways as well. As discussed above, the Oxon Hill store failed two audits under his watch. Had she been hunting for an excuse to fire him, Ms. Holmes surely could have found it there. Instead, the company reduced the August 2015 reprimand from Level III to Level II in recognition of the fact that Mr. Wantou Siantou had been on leave at the time of a previous audit. *See* Holmes Decl. ¶ 9.

Ultimately, I see no way for Mr. Wantou Siantou to satisfy his burden of showing he would not have been fired but for his complaints to management or the EEOC. I conclude his termination does not support a retaliation claim under state or federal law.

## CONCLUSION

This Memorandum Opinion dispenses with most, but not all, of Mr. Wantou Siantou's claims. As to Count I (racial discrimination under § 1981), I grant summary judgment in favor of CVS. As to Count IV (retaliation under state and federal law), I conclude that the August 2015 and October 2015 reprimands and Mr. Wantou Siantou's January 2016 termination do not survive summary judgment. However, the retaliation claim based on the April 2015 Level III reprimand may proceed. This claim, and only this claim, will proceed to trial. I will shortly schedule a telephone conference call with the parties to discuss the trial and related scheduling matters.

A separate order follows.

/S/
_____
Paul W. Grimm
United States District Judge