# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

|  |  |  |
|---|---|---|
| Stephane J. Wantou Siantou, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Case No. 8:17-cv-543-PWG** |
| | ) | |
| CVS Rx Services, Inc., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## REPORT & RECOMMENDATIONS

This "Report and Recommendations" addresses the "Plaintiff's Renewed Motion for Attorneys' Fees," the supplemental pleadings filed related thereto, and all memoranda in support of the same (ECF Nos. 172, 189, 194, 231) filed by Plaintiff Stephane Wantou Siantou ("Plaintiff").

Pursuant to 28 U.S.C. § 636, and Local Rule 301.5(b), the Honorable Paul W. Grimm referred this matter to me to issue a report and make recommendations. I have reviewed the abovementioned pleadings and the responses from the Defendant (ECF Nos. 176, 198). I believe that the issues have been fully briefed, and do not believe that a hearing is necessary. L.R. 105.6. As set forth more fully below, I ultimately recommend that the Court grant the motion for attorney's fees and award $**162,092.63** in fees, as set forth herein.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

This protracted litigation began more than three years ago on December 14, 2016, when Plaintiff, without the assistance of counsel, filed a Complaint against Defendant CVS[1] ("CVS Rx") in the U.S. District Court - Northern District of Texas, alleging that he was unlawfully terminated in violation of Title VII, 42 U.S.C. § 2000e. (ECF No. 1). Plaintiff subsequently filed a motion to transfer venue to this Court, which was granted. (ECF Nos. 7, 8). Thereafter on March 28, 2017, Daniel E. Kenney entered his appearance as counsel for Plaintiff. (ECF No. 15).

On June 7, 2017, Plaintiff filed an Amended Complaint, advancing four counts against the Defendant: race discrimination (Count I) and retaliation based on his protected class status (Count IV); national-origin discrimination (Count II); and gender discrimination (Count III), in violation of Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, and the Maryland Fair Employment Practices Act ("MFEPA"), Maryland Code, Title 20, Section 20-601, *et. seq.*, respectively. Plaintiff sought compensatory and punitive damages. The Amended Complaint described allegedly-discriminatory and retaliatory conduct that occurred between November 2014-January 14, 2016, which Plaintiff alleged was predominantly committed by Plaintiff's former supervisor, Tiana Holmes. The allegedly-discriminatory conduct consisted of *inter alia*: a November 2014 counseling for late arrival to work and January 2015 and April 2015 reprimands for leaving the pharmacy; as well as reprimands in August 2015, October 2015 following pharmacy audits; and lastly, his termination on January 14, 2016. (ECF No. 29).

On August 15, 2017, Defendant filed a motion to dismiss several of Plaintiff's claims, asserting that Plaintiff failed to administratively exhaust his Title VII and MFEPA claims. Plaintiff decided not to challenge the motion, and on September 19, 2017 the district court granted the

---

[1] Plaintiff initially named "CVS" as the defendant, but later filed an amended complaint that contained the Defendant's correct name "CVS Rx Services, Inc." ECF No. 29.

motion. (ECF Nos. 41, 42, 46). Accordingly, two counts remained, and discovery occurred related to those claims: racial discrimination, in violation of 42 U.S.C. § 1981 (Count I), and retaliation, in violation of Title VII, 42 U.S.C. § 1981 and MFEPA (Count IV). (ECF No. 46).

On May 18, 2018, Defendant filed a motion for summary judgment on Counts I and IV, contending that Plaintiff could neither establish retaliation nor racial discrimination. (ECF No. 67, pp. 24-31). Plaintiff countered that he had established a "plausible claim" of discrimination under the statute as well as based on "disparate treatment between Wantou and [an underling] by [his supervisor]." (ECF No. 71, p. 35).[2]

The Honorable Paul W. Grimm entered an order and memorandum opinion granting Defendant's motion as to Count I, and granting in part and denying in part the motion as to Count IV. Regarding Count I, the district court held that Plaintiff failed to show that he was treated differently than employees outside of the protected class and that his termination was due to racial bias. Regarding Count IV, the retaliation claims related to the November 2014 counseling, January 2015, August 2015, and October 2015 reprimands and his January 2016 termination were retaliatory. (*See* ECF No. 82). In that memorandum opinion, the district court denied Plaintiff's request to file a surreply. (ECF No. 82, p. 11 n. 7). Thus, what remained for trial is the part of Count IV related to whether Defendant retaliated against Plaintiff by issuing an April 2015 Level III reprimand.

On December 28, 2018, Defendant filed a motion in limine, seeking to prevent Plaintiff from introducing at trial evidence related to the dismissed claims, which it deemed irrelevant. (ECF No. 87). Plaintiff filed a response thereto, arguing that evidence leading up to the April 2015 reprimand was relevant, e.g., to whether he engaged in a protected activity, yet conceded that

---

[2] Plaintiff also filed a motion for leave to file a surreply. (ECF No. 73).

certain evidence after the April 2015 reprimand was not relevant, except possibly for impeachment purposes .(ECF No. 104). Following the pretrial conference, the district court granted the motion in limine (ECF Nos. 110, 111).

There were two trials. On February 28, 2019, following seven days of trial, a jury found that Defendant retaliated against Plaintiff, and on July 26, 2019, the district court entered judgment in the amount of $125,000 for Plaintiff. (ECF Nos. 130, 165). In the punitive damages trial, a jury returned a verdict in favor of CVS Rx. (ECF Nos. 88, 111, 159).

Following entry of judgment, both CVS Rx and Plaintiff filed motions for judgment and/or motions for new trial related to the award of compensatory damages and the lack of award of punitive damages, respectively. (ECF Nos. 178, 179). That same day, Plaintiff filed two other motions: a motion for reconsideration, or in the alternative, to amend the judgment with respect to the court's order partially granting summary judgment, and a reconsideration motion, or alternatively to amend the judgment, regarding the court's order partially granting Defendant's motion to dismiss. (ECF Nos. 180, 181). The district court denied all motions (ECF No. 205).

Plaintiff initially noted his request for attorney's fees in a letter, and later superseded it with an actual motion and supplemental submissions. The matter has been fully briefed (ECF Nos. 163, 172, 176, 189,194,198, 231). The matter was referred to me to author a Report and make recommendations. (ECF No. 183).

## II.     MOTION FOR ATTORNEY'S FEES

### A.     Legal Standard

Title VII of the Civil Rights Act of 1964 authorizes an award of attorney's fees in certain circumstances. In this case:

"[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

42 U.S.C. § 2000e-5(k); *see also* 42 U.S.C. § 1988(b). Before deciding whether an award of attorney's fees is appropriate in a given litigation, then, a court must determine whether the party seeking fees is a "prevailing party," a threshold question for which the Supreme Court has said it will accord a "generous formulation." *Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983). A plaintiff is a prevailing party for the purpose of an attorney's fees award if the plaintiff succeeds "on any significant issue in litigation which achieves some of the benefit [the party] sought in bringing suit." *Id.* at 433.

Where a Plaintiff is a prevailing party, a court must determine what fee is reasonable. *Hensley*, 461 U.S. at 433. To do so, courts engage in a three-step process.

First, a court must calculate the lodestar, i.e., "the number of reasonable hours expended [multiplied by] a reasonable rate." *Randolph*, 715 Fed. App'x 227, 230 (4th Cir. 2017) (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). To determine what is "reasonable" in the lodestar calculation, a court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). These twelve factors are the following:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* ("*Johnson* factors"); *McAfee*, *supra*, 738 F.3d at 88.

Second, according to *Randolph*, a court must "subtract fees for hours spent on unsuccessful claims **unrelated** to successful ones." 715 Fed. App'x at 230 (citation omitted)(emphasis supplied). In that regard, if a plaintiff prevails on only some of the claims, "the number of hours may be adjusted downward." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

Finally, per *Randolph*, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Randolph*, 715 Fed. App'x at 230 (citing to *McAfee*, 738 F.3d at 88).

B.      Plaintiff's Request for Attorney's Fees

A party seeking an award of attorney's fees must establish entitlement to same by documenting the hours expended and the corresponding hourly rates. *Hensley*, 461 U.S. at 437.

In this case, Plaintiff requests fees for 587.3 hours of attorney work, and 16.6 hours of paralegal work, for a total of 603.9 hours. (ECF No. 194). Plaintiff's first petition and attachments detail 530.8 hours of work related to: case administration, case development, pleadings, document production, interrogatories, ADR, depositions, pre-trial motions practice, attending court hearings, trial preparation, trial, fee petition preparation, and about 4.6 hours on post-trial motion-related issues. (ECF Nos. 172, 231). Plaintiff's supplemental petition identifies 56.5 hours related to post-trial motions, including reconsideration motions, preparing a reply to the fee petition request, and hours related to the supplemental request for attorney's fees. The additional fees sought related to post-trial motions are for hours: (a) pertaining to drafting an opposition to Defendant's motion for judgment as a matter of law/for a new trial; (b) for a motion regarding the lack of punitive damages; (c) related to a motion for reconsideration, or in the alternative, to amend the judgment with respect to the court's order partially granting summary judgment; and (d) related to a reconsideration

motion, or alternatively to amend the judgment, regarding the court's order partially granting Defendant's motion to dismiss. (ECF Nos. 194-1, 231-1).

For the work, Plaintiff offers two alternative theories of "reasonable" fees: a total amount of $244,904.10, calculated by using the *Laffey* Matrix[3] rate of $417/hour (attorney) and a rate of $100/hour (paralegal) and multiplying it by the attorney and paralegal hours incurred; or, a total amount of $176,190, computed by using the U.S. District Court of Maryland Local Rules, Appendix B, rate of $300/hour(attorney) and $100/hour (paralegal) and multiplying it by the number of hours incurred. (ECF Nos. 172-4, 231-2). In addition, Plaintiff conducted his own analysis of the requested rates and hours pursuant to the *Johnson* factors, asserting that the requested amount of attorney's fees is reasonable. (ECF No. 172-1, pp. 14-16).

C.      CVS Rx's Opposition and Objections

A defendant who challenges the award requested "bears the burden of explaining its objections with sufficient detail and specific reference to the plaintiff's time records to allow the court to evaluate those challenges without itself pouring over the time records searching for unnecessary charges." *Nelson v. A&H Motors, Inc.*, Civ. No. JKS 12-2288, 2013 WL 38891 at *3 (D. Md. Jan. 20, 2013)(citation omitted).

In its Opposition to Plaintiff's Motion for Attorney's Fees, CVS Rx contends that the prevailing market for the hourly attorney fee rate is the District of Maryland, and therefore the Appendix B rates apply, not the *Laffey* Matrix rates. (ECF No. 176-1, pp. 4-5). Next, Defendant avers that the attorney's fee reimbursement request is unreasonable in three respects: (1) Two out of four counts in the Amended Complaint were dismissed in September 2017; (2) with respect to the remaining two counts, CVS Rx prevailed "with respect to the majority of its arguments at

---

[3] *See* Section III.B.

summary judgment," which necessitates a $18,270 reduction in the fee award sought for summary judgment motions practice; and (3) Plaintiff should reduce the number of hours sought for preparing the fee petition from 15.5 hours to 7.75 hours, because Plaintiff's counsel "has not identified and remov[ed] time devoted to his unsuccessful claims." (ECF No. 176-1, pp. 5-7).

In response to Plaintiff's supplemental fee petition, CVS Rx objects to five (5) hours of fees for work performed related to Plaintiff's motions for reconsideration of the district court's orders dismissing claims. (ECF No. 198-1).

## III. ANALYSIS AND FINDINGS

### A. Plaintiff is a Prevailing Party

As an initial matter, Plaintiff is indisputably a prevailing party under the meaning of Title VII, 42 U.S.C. §1981. A jury returned a verdict for the Plaintiff and the court entered judgment in his favor; therefore, he is a "prevailing party" entitled to attorney's fees. The question remains, however, what are reasonable rates and what are a reasonable number of hours, and ultimately what is a reasonable fee award.

### B. Reasonable Rates

In support of his argument for the award of a *Laffey* Matrix[4] rate, Plaintiff submitted two affidavits: one from his counsel and one from a prominent employment law attorney, Morris E. Fischer, Esq. (*See* ECF Nos. 172-2 through 172-7, 194-1, 231-1 through 231-3). In essence, Plaintiff maintains that the *Laffey* Matrix rate is reasonable because: (a) this is a civil rights employment case, and counsel uses this rate in all of his representative matters of this type; (b)

---

[4] The *Laffey* Matrix is a metric used by the U.S. Attorney's Office in the District of Columbia to calculate rates for attorneys practicing in civil cases in **courts located in Washington, D.C.** (emphasis supplied). *See* ECF No. 172-5, p.1, n.1("This matrix of hourly rates for attorneys of varying experience levels. . . has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia(USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts").

Plaintiff agreed to have attorney's fees computed at this rate; and (c) according to Mr. Fischer, who is familiar with Mr. Kenney's skills and with the Maryland suburban employment law community, use of the *Laffey* metric is customary. (ECF No. 172-1, pp. 12-13).

When assessing the reasonableness of a requested fee reimbursement rate, a court must evaluate whether the attorney's rates match those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984). In the Fourth Circuit, an analysis of the fee "customarily charged in the locality for similar legal services" requires a court to consider the "community in which the court sits [as] the first place [to evaluate] prevailing market rate." *Rum Creek Coal Sales, Inc. v. Caperton*, *supra*, 31 F.3d at 174; *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, Civ. No. MGJ-95-309, 2002 WL 31777631, at *12 (D. Md. Nov. 21, 2002).

In addition to the attorney's own affidavit, a fee applicant must produce "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)(internal quotation marks omitted). An example of "satisfactory specific evidence" has been held to be "affidavits from other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 788 (D.Md.2000) (evidence of the prevailing market rate "usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate").

Where there is an absence of sufficient documentation, that is when a court may rely on its own knowledge of the prevailing market rate which, in this district, "is embedded within

[Appendix B of the U.S. District Court of Maryland Local Rules].” *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).[5]

Defendant counters that using the *Laffey* Matrix would be inappropriate here for three reasons: (1) Plaintiff was a Maryland resident at the time of this case and the matter was filed in this Maryland federal court; (2) the fact that Plaintiff agreed to pay his counsel the *Laffey* Matrix rate is irrelevant, and (3) “The Fourth Circuit has rejected applying [*Laffey*] to support fee awards in cases outside of the District of Columbia.” (ECF No. 176-1, p. 5). Defendant relies upon *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008) and *Robinson*, *supra*.

I have reviewed all of the pleadings and exhibits in this case. I am not persuaded by Mr. Kenney’s argument that Plaintiff’s agreement to *Laffey* Matrix rate, by itself, is a factor relevant to this court’s determination of the reasonableness of his fee. I do not understand how a business practice that benefits Mr. Kenney is relevant to the determination that I must make. Indeed, counsel does not cite to any caselaw to support this argument.

However, in this case, I do find that Plaintiff has provided “satisfactory specific evidence” of the prevailing market rate in this employment case. First, his own affidavit contains ample evidence of his significant experience in employment law litigation, including serving as lead counsel in approximately eighteen federal district court employment cases in roughly nine years at bar. (*See* ECF No. 172-4, pp. 1-4). Second, reviewing the affidavit of Mr. Fischer, I find that he is a seasoned attorney with noteworthy credentials and significant experience in the Washington D.C. area employment law field. (*See* ECF 172-6, ¶¶ 1-8). In addition, in his affidavit, Mr. Fischer: (a) says that he is familiar with the skills of the fee applicant; (b) states that he is familiar with the employment law-related work done by practitioners in the relevant community (the Maryland

---

[5] Appendix B (“the Guidelines”), although not binding, presumptively sets forth ranges of reasonable hourly rates based on an attorney’s years of experience. *Gonzales*, 2011 WL 3886979, at *2.

suburbs, including Silver Spring, Bethesda, and Chevy Chase); (c) represents that he is familiar with the prevailing market rates in the relevant community; (d) says that he is familiar with the *Laffey* Matrix rates; and (e) suggests that Mr. Kenney's rate of $417/hour coincides with the prevailing market rate of Maryland suburban attorneys. While his affidavit does **not** explicitly state that Mr. Kenney's rate coincides with the prevailing market rates of attorneys in suburban Maryland "of similar skill and for similar work," *Grissom*, 549 F.3d 313, it is the reasonable, logical inference to be drawn from reading the affidavit. (*See*, *e.g.*, ECF 172-6, ¶¶9-13, 15-17, 19).

I find *Plyler v. Evatt* to be instructive. In *Plyler*, a civil rights action related to prison overcrowding, the plaintiffs provided affidavits related to their counsel's rates, experience, and skills, and also affidavits from South Carolina lawyers familiar both with the plaintiffs' counsel's skills and civil rights litigation in South Carolina in order to establish the reasonable market rate. In contrast, the defendants argued that the relevant evidence of the market rate was found in an affidavit that they submitted, which identified multiple cases wherein South Carolina civil rights attorneys were retained by the state at lower rates than those sought by Plaintiffs. Despite this conflicting evidence, the Fourth Circuit found that the district court did not err in finding sufficient plaintiffs' tendered evidence of the prevailing market rates. 902 F.2d at 278.

This case is distinguishable from *Grissom* and *Robinson*. In *Grissom*, plaintiff only submitted affidavits from his own counsel, not from attorneys outside of the firm, to try to meet his burden of establishing the prevailing market rate of attorneys in Virginia for similar work. The Fourth Circuit held that this ran afoul of *Plyler*. 549 F.3d at 323. Similarly, in *Robinson*, the Fourth Circuit found that plaintiff failed to offer specific evidence that his attorney's fee rate coincided with the prevailing market rates of other attorneys in Virginia for similar skills and work. 560 F.3d at 245.

Alternatively, assuming that I should find that the Guidelines reflect the presumptively reasonable market knowledge of attorney fee rates in Maryland, I would still recommend that the district court apply an hourly billing rate above the Guidelines. The applicable range under the Guidelines for Mr. Kenney, an attorney admitted to the bar for approximately 8 years, is $165-$300 per hour. *See* Appendix B, 3. I reviewed the pleadings, docket sheet entries, the transcript for the first day of trial, and the recording of the pretrial conference/motions hearing to aid me in assessing the overall reasonableness of the attorney fee rate under "lodestar." I consider the following *Johnson* factors to especially support the upward adjustment to $417.00/hour:

Category #1- (3) <u>The skill requisite to perform the legal service properly</u> and (9) <u>the experience, reputation, and ability of the attorney</u>. *Johnson* instructs the court to "closely observe the attorney's work product, his preparation, and general ability before the court." 488 F.2d at 718-720. Here, Mr. Kenney clearly has significant employment law litigation experience, as reflected in his affidavit. (*See* ECF No. 172-4, pp. 1-4). In addition, here are a few examples that I found in reviewing the record in this case related to counsel's skill: Within approximately four months of this initially-*pro-se*-matter being transferred to this District, counsel entered his appearance and filed an Amended Complaint that more fully articulated the Plaintiff's claims for relief. (*See* ECF No. 29). Furthermore, after Defendant filed a motion to dismiss, Plaintiff's counsel reviewed the evidence in the case and Defendant's arguments and decided not to challenge dismissal of some claims, evidencing an exercise in judgment that likely led to the conservation of judicial resources. (*See* ECF No. 42). Third, after Defendant filed a *motion in limine* to preclude the introduction at trial of some evidence related to Plaintiff's termination and certain reprimands, counsel for Plaintiff demonstrated a keen understanding of the Federal Rules of Evidence related to impeachment and relevance, and conceded the inadmissibility of certain evidence. (*See* ECF Nos.

104, 110, 111). At least one district court has found an attorney's skills to be a heavily-weighted factor in the lodestar analysis. *See Peacock v. Bank of America Corp.* 133 F.Supp. 2d 1322, 1327 (M.D. Fla. 2000)("skill is evidenced by an attorney's initial case assessment, continuing negotiation, and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency").

Category #2- (1) the time and labor required; (8) the amount involved and the results obtained. Throughout the life of this 2.5- year case, Plaintiff was represented only by one attorney, while Defendant was frequently represented by at least two attorneys. (*See, e.g.,* ECF No. 67). Counsel notes that he litigated against "one of the largest companies in the nation, represented by the largest employment law firm in the world." (*Id.* at 14). Continuously representing a Plaintiff by facing off against two attorneys is no small feat, especially not in a case involving significant motions practice, several depositions and substantial document productions, and the need to prepare for not just one, but two jury trials. (*See* ECF No. 231-2, pp. 1-25). The first trial resulted in a $125,000 verdict for Plaintiff, evidencing the jury's belief that Plaintiff met his burden of establishing that he was retaliated against. (*See* ECF No. 165).

Category #3- (5) the customary fee, and (11) the nature and length of the professional relationship with the client. I have already addressed these issues above and find that they work with the other factors analyzed to support an upward adjustment.

In sum I recommend that you award Plaintiff's counsel his requested attorney fee rate of $417.00/hour. In addition, I have reviewed the records submitted related to paralegal work performed, and I also find that rate of $100.00 to be reasonable.

C.    Reasonable Hours

In support of the fee petition, Plaintiff submitted time entry records[6] of attorney and paralegal hours billed by category of work and additional documents in support thereto. (ECF Nos. 172-1 through 172-8, 231-1). Defendant raises objections to: (a) the amount of attorney hours identified in connection with responding to the summary judgment motion; (b) the amount of attorney hours sought in preparing the fee petition; and (c) the amount of attorney hours requested related to two of Plaintiff's post-trial motions for reconsideration. (ECF Nos. 176-1, 198).

1.    Motion for Summary Judgment

My review of the corrected time entry record reveals that Plaintiff identifies 91 hours related to "Motions Practice," of which 75.8 hours are dedicated to summary judgment: 51.2 hours dedicated to opposing CVS Rx's summary judgment motion, and 24.6 hours related to filing a surreply to Defendant's summary judgment motion. (ECF No. 231-1, pp11-18, 21-22). I will use these hours when analyzing the issues.[7]

According to Plaintiff, the hours that he seeks are reasonable because he succeeded on the Title VII, §1981, and MFEPA retaliation claims, which were not "distinct in all respects" from his unsuccessful claims-i.e., the claims dismissed at the summary judgment phase (the race discrimination and retaliation claims related to his January 2016 termination, and to warnings issued in November 2014, August 2015 and October 2015). Specifically, Plaintiff asserts that the unsuccessful claims and the successful claims were predicated on the same common core of facts

---

[6] Upon request to provide an error-free time entry record and additional information, Mr. Kenney filed a supplemental letter with exhibits. (*See* ECF Nos. 229, 231, 231-1). There were no material changes to the time entry record. I do note, however, that there appears to be a minor date error related to an entry categorized as "trial prep" with a date of 2/26/18. (ECF No. 231-1, p. 18). It makes sense for the date to be "2/26/19."

[7] Defendant says that Plaintiff identified 95 hours, 79.2 of which were related to "fees incurred in opposing CVS's Motion for Summary Judgment." (ECF No. 176-1, p. 6).

and involved, e.g., "the same supervisors, the same witnesses, the same legal theories, much of the same conduct. . .the same employment. . .the same store, the same pharmacy. . . ." (ECF No. 172-1, p. 10-12). Plaintiff continues that the discipline Plaintiff received in November 2014 and in January 2015 "form[ed] the very basis for Plaintiff's April 2016 (sic) retaliatory Level III discipline claim," and "Plaintiff's complaints regarding the November 2014 and January 2015 discipline and audits constitute pre-April 201[5] protected activity." (ECF No. 189, pp. 2-3). Thus, the time spent "opposing CVS's motion for summary judgment was 'related' to Plaintiff's successful claims," and the earlier conduct was "necessarily linked to the successful April 201[5] Level III retaliation claim." (*Id.*).

Defendant argues that some of the time spent on summary judgment motions practice was unreasonable. According to the Defendant, the court should subtract fees related to Plaintiff's litigation of unsuccessful discrimination and retaliation claims. In particular, because two of the four claims raised in the Amended Complaint were dismissed (sex and national origin discrimination), and CVS Rx prevailed at the summary judgment stage on the race discrimination, termination, and retaliation claims related to the warnings in November 2014, August 2015 and October 2015, then, before trial, "CVS [had] prevailed on 100% of Plaintiff's [race] discrimination claims and 75% of Plaintiff's retaliation claims." Thus, the argument continues, a 75% reduction is warranted for Plaintiff opposing Defendant's summary judgment motion. (ECF No. 176-1. pp. 6-7).

In *Hensley v. Eckerhart*, the Supreme Court opined on factors related to the reasonableness of the attorney's fees sought, which the lower court should consider upon remand. In order to determine whether a court should adjust upward or downward the amount of attorney's fees sought, one important factor to consider relates to the results obtained. The Supreme Court opined:

This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation, two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

461 U.S. at 434-35. In addition, in a scenario where a plaintiff presents unrelated claims, i.e., claims that are "**distinctly different claims for relief that are based on different facts and legal theories**," the attorney hours spent on the unsuccessful claims should be excluded. *Id*. at 435(emphasis supplied). The Supreme Court also recognized that some cases present a single claim, while others involve more than one claim. In the latter scenario, if plaintiff's claims for relief involve "**a common core of facts**," or "**are based on related legal theories:**"

Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435 (emphasis supplied). The Supreme Court further elaborated on the relevance of the results achieved to the fee ultimately awarded: if a plaintiff obtains "excellent results, his attorney should recover a fully compensatory fee. . .In these circumstances, the fee award should not be reduced simply because plaintiff failed to prevail on every contention raised in the lawsuit."

*Id.* at 435. Alternatively, if:

a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . Again, the most critical factor is the degree of success obtained.

461 U.S. at 436.

In sum, a claim is "unrelated" if it is "distinct in all respects from [successful] claims," and a claim is "distinctly different" if it is "based on different facts and legal theories." *Hensley*, 461

U.S. at 434, 440. Thus: (a) if a plaintiff loses on a claim that is distinct in all respects from the successful claims, then all of the "unsuccessful claim hours" should be excluded as unreasonable; (b) where a plaintiff's lawsuit has related claims, and he obtains "substantial relief" from a jury, e.g., then I do not have to reduce the attorney's fees sought, simply because the district court granted summary judgment on one or more of claims raised by plaintiff in his Amended Complaint. However, if a plaintiff only achieves "limited success" then, I should only award what is reasonable in relation to the results obtained. *Hensley*, 461 U.S. at 440. Relatedly, if a plaintiff receives relief but "it is limited in comparison to the scope of litigation as a whole, "then I should not be afraid to reduce the award if I found the hours expended to be unreasonable. *McAfee*, 738 F.3d at 92 (quoting *Hensley*, *supra*, at 439-40).

I do not find that a deduction under step two of *Randolph* is warranted. I do not find that the claims denied on summary judgment (Count I and parts of Count IV) are entirely unrelated to the successful retaliation claim. Although proof of Count I would have required proof of different legal elements, what was presented at trial did not appear to involve distinctly different claims that were based on different facts. Regarding Count IV, even though the district court precluded the introduction of evidence after April 2015, what remained was neither unrelated nor distinctly different. The evidence involved the same supervisor, same facts, and much of the same legal theory. (*See* ECF Nos. 111, 125, 211). I find that the evidence included the November 2014 warning and facts related to Plaintiff's beliefs that he was discriminated against based on race. (*Id.*) The evidence involved a common core of facts, and the jury must have found it relevant to its determination that Plaintiff engaged in protected activity before April 2015.

This case is distinguishable from *Musa v. Soar Corp.*, 2015 U.S. Dist. LEXIS 17398, *15-16 (E.D. Pa. 2015). In *Musa*, the plaintiff's amended complaint alleged race and gender

discrimination (state and federal claims), and retaliation and unpaid overtime wages under the Fair Labor Standards Act and state statutes. At the summary judgment phase, the court granted dismissal of the race, gender, and retaliation claims, leaving only unpaid overtime wages claims for trial. The district court denied an attorney's fees request predicated on the time billed for the entire case, finding that where the trial focused only on approximately 350 hours of unpaid overtime wages the discrimination and retaliation claims were "distinct claims premised upon different facts." Because that plaintiff failed to prevail on claims that were unrelated to the claims upon which he success, a reduction was appropriate. 2015 U.S. Dist. LEXIS 17398, *12-13. As stated above, this is not the case here.

However, when I assess the overall reasonableness of the attorney hours billed under the lodestar, I believe that a reduction in hours is appropriate based on Plaintiff's motion for leave to file a surreply. Plaintiff's time entry records reflect 24.6 hours dedicated to drafting a surreply-related motion. (ECF No. 231-1, p. 14). First, the district court held that "courts do not permit a party to file a surreply unless it otherwise would not have an opportunity to contest a matter that the non-moving party had failed to present prior to its reply." (*See* ECF No. 82, p. 11 n. 7). Second, the district court declined to exercise its discretion to grant surreply leave, finding, that "none of the arguments in the reply could have caught [Plaintiff] by surprise," and that CVS Rx did not rely in its reply on discovery that it produced at a late date to Plaintiff. (ECF No. 82, pp. 11-12, n. 7).

Accordingly, I do not find these surreply hours to be reasonable, and I recommend a deduction of **$10,258.20 ($417/hour x 24.6 hours)**.

Finally, as set forth more fully below in Section III.D, I find that *Hensley* and *McAfee* support a reduction based on the degree of success.

## 2. Reduction Based on Documentation First Submitted

A court can reduce hours awarded if the documentation submitted is "vague or incomplete." *CoStar Group, Inc. v. LoopNet, Inc.,* 106 F.Supp.2d at 788. Because the first time entry record contained a fair number of errors and documentation was lacking related to the paralegal, I recommend a minor reduction of **$1,000**.

In addition, I do not find that a reduction is warranted for the 16.6 paralegal hours expended. The number of hours requested are reasonable, and I recommend award of the full amount.

## 3. Post-trial Motions for Reconsideration

My review of the time entry records reflect that Plaintiff seeks 61.1 hours for work related to the post-trial motions, including, as relevant here, 5 hours of work for reconsideration motions related to the district court's orders dismissing claims and partially granting summary judgment. (ECF Nos. 194, 231-1). CVS Rx objects to fees for those 5 hours. Specifically, Defendant asserts that these motions were untimely and lack merit. (ECF No. 198-1, p.2). On November 15, 2019, the district court denied both motions, finding that they were untimely and failed to satisfy Fed. R. Civ. P. 59(e) and 60(b). (ECF No. 205). Under these circumstances, I find that the hours were unreasonable and recommend a deduction of **$2,085 ($417/hour x 5 hours).**

## 4. Fee Petition Preparation

Plaintiff seeks attorney's fees for the 18 hours that he spent preparing the initial fee petition and the reply to Plaintiff's opposition thereto. (ECF Nos. 194, 231-1). Defendant, citing to *Musa*, maintains that a reduction in fee petition hours is appropriate because Plaintiff "[did] not identif[y] and remove time devoted to his unsuccessful claims." (ECF No. 176-1, p. 7).

I have reviewed the records related to the fee petition preparation. Plaintiff has not identified which hours were dedicated to successful claims vs. unsuccessful claims. As a practical matter, I find that because opposing the summary judgment motion required analysis of the common core of facts and then-related legal theories, it would be unnecessary to parse out how much of counsel's time was dedicated to successful or unsuccessful claim. *See Hensley*, 461 U.S. at 435. In addition, I have found *Musa* inapplicable here, and I do not recommend a reduction in hours for the fee petition.

D.    Degree of Success

As I stated above in Section III C., I must consider the degree of success obtained. The Fourth Circuit in *Randolph v. Powercomm Construction, Inc.* has made clear that evaluation of the extent of the "success" relative to the fee award occurs after I consider whether to deduct fees associated with time spent on "unrelated, unsuccessful claims." *See* 715 Fed.Appx. 227, 231("the relief obtained was more appropriately considered after deducting the time spent by Plaintiffs' counsel pursuing unrelated, unsuccessful claims").

When assessing the degree of success of the plaintiff, a court must "consider the amount of damages sought to the amount awarded. If a. . .plaintiff achieves only part of the success [he] sought, the lodestar amount may be excessive." *McAfee*, 738 F.3d at 92-93 (internal quotation marks and citation omitted).

In this case, Plaintiff's Amended Complaint contained four counts, two of which were dismissed (ECF No. 46). After discovery, Defendant moved for summary judgment, which was granted on Count I, and granted in part on Count IV as to several of Plaintiff's retaliation claims. (ECF Nos. 82-83). Thus, what remained for trial was only one of Plaintiff's many theories of retaliation, and the presentation of facts related thereto were even further limited at the pretrial

conference. (ECF No. 110, 111). Even though the jury did award $125,000, Plaintiff sought $1,000,000 in damages. In addition, it is important to note that the jury did not award Plaintiff the punitive damages that he sought. I think that it is important for me to consider that Plaintiff was not successful on a majority of his claims, but I do not think that it "warrant[s] reducing his attorney's fees based on a percentage of his successful claims as compared with the total number of claims he originally sought." *Sergeant v. Acol, et. al*, Civ. No. PWG 15-2233, 2018 WL 276431, *9 (D. Md. Jan. 3, 2018); *see also Hensley*, 461 U.S. at 435 n.11 ("we agree with the District Court's rejection of a 'mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'"). While counsel is not entitled to a "windfall," it is important for the fee award in this case to be adequate "to attract competent counsel." *Butler v. Directsat USA, LLC.*, Civ No. DKC 10-2747, 2016 WL 1077158, *6 (D. Md. Mar. 18, 2016). It is also important to consider the *Johnson* factors, as I did above in Section III.C.1., in finding the appropriate fee award. Accordingly, because of Plaintiff's lack of litigation success, relatively speaking, the requested fee will be reduced by 30%.

## IV.    COSTS

Plaintiffs submitted a separate pleading-- an amended bill of costs-- seeking reimbursement for $6,773.31 in taxable costs. (ECF No. 173). Plaintiff refers to the costs in his fee petition motion, and also appends a few supporting exhibits thereto. (ECF Nos. 172-1, pp 16-17; 172-7, 172-8). In the fee petition motion, Plaintiff references $6,773.31 in taxable costs, and $2,431.43 in non-taxable costs. (*Id.*). In its opposition to the fee petition motion, CVS Rx did not address the bill of costs issue, opting instead to file a separate response. (ECF No. 175). To the extent that the district court wants me to consider the propriety of these costs,[8] I remain available to analyze them.

---

[8] *See* ECF No. 183.

**V.     CONCLUSION**

In sum, I find that the requested hourly attorney and paralegal rates ($417/hour and $100/hour) are reasonable. I further find that the majority of the requested number of hours are reasonable, with the adjustments set forth above. I have multiplied the number of reasonable hours expended by the reasonable rates for the attorney as instructed by *Randolph*, and followed the other *Randolph* requirements. I further find that other reductions were warranted, including a reduction based on the extent of success is warranted. I ultimately recommend a total fee award of **$162,092.63 ($244,904 - 13,343.20 x 30%).**


Dated:  January 14,  2020                                          _____/s/_____
                                                                                          The Honorable Gina L. Simms
                                                                                          United States Magistrate Judge